IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY TABAREZ,

       Plaintiff,                       No. 2: 04-cv-0360 LKK KJN P

   vs.

DIANA BUTLER, et al.,

       Defendants.              FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding without counsel (or "pro se") with a civil rights action. On January 19, 2011, the undersigned recommended that plaintiff's motion to rescind the settlement agreement be denied and that defendants' motion to enforce the settlement agreement be granted. On March 31, 2011, the Honorable Lawrence K. Karlton adopted the findings and recommendations except for the finding that plaintiff understood the nature of the settlement agreement and appreciated its consequences based on his alleged medical condition. Judge Karlton remanded this issue to the undersigned for an evidentiary hearing.

        On July 1, 2011, the undersigned conducted an evidentiary hearing as ordered by Judge Karlton. Having carefully considered the record and the evidence and testimony received at the evidentiary hearing, the undersigned finds that plaintiff understood the nature of the

1

1  settlement agreement and appreciated its consequences.  Accordingly, plaintiff's motion to
2  rescind the settlement agreement on these grounds should be denied and defendants' motion to
3  enforce the settlement agreement should be granted.
4  II.  Discussion
5     "The construction and enforcement of settlement agreements are governed by
6  principles of [state] law which apply to contracts generally."  Jeff D. v. Andrus, 899 F.2d 753,
7  759 (9th Cir. 1990).  A contract is voidable under Cal. Civil Code § 39(a) if the party had "an
8  inability to understand the nature of the contract and to appreciate its probable consequences."
9  Hellman Commercial Trust & Savings Bank v. Alden, 206 Cal. 592, 605 (1929).
10    Plaintiff seeks to rescind the settlement agreement on grounds that on the day of
11 the settlement conference, he was allegedly under the influence of pain medication.  In his
12 declaration submitted in support of his motion for rescission, plaintiff stated that at the time he
13 accepted the settlement agreement he was on pain medications, and that he felt his "head was
14 spinning," he "could not think straight," he was "in pain," he felt "overwhelmed," and that he
15 needed additional time to think about the settlement agreement.  Plaintiff also stated in his
16 declaration that the pain medication made him feel "light-headed, dizzy, sleepy, nauseous,
17 disoriented and high."
18    At the approximately 5-hour long evidentiary hearing, the undersigned heard
19 testimony and received evidence regarding the effect of the pain medication on plaintiff.  This
20 testimony and evidence is summarized below.
21    *Summary of Evidence/Testimony from Evidentiary Hearing*
22    On June 23, 2010, plaintiff had surgery at a private hospital for an enlarged
23 prostate.  Following his return to prison on the same day, plaintiff was prescribed Tylenol with
24 codeine, aka Tylenol 3, for fourteen days, i.e. from June 23, 2010, to July 7, 2010.  On July 27,
25 2010, plaintiff received a renewal of his Tylenol 3 prescription for 90 days.  This prescription
26 was repeatedly renewed until June 2011.

On July 9, 2010, a settlement conference was held in this action. At the settlement conference, plaintiff was represented by attorney Craig Weaver. Magistrate Judge Vadas conducted the settlement conference.

At the evidentiary hearing, plaintiff testified that on the morning of July 9, 2010, he took a Tylenol 3. Plaintiff testified that at the settlement conference he felt drowsy and "kind of sick." Plaintiff also testified that on the day of the settlement agreement, he had also taken high blood pressure medicine and ibuprofen. Plaintiff testified that when Judge Vadas spoke to him, he (plaintiff) was in a daze. Plaintiff testified that when he was on the Tylenol 3, he did not understand what was going on.

Plaintiff admitted at the evidentiary hearing that he did not ask his lawyer to cancel the settlement conference because he felt unwell. Plaintiff also testified that he did not tell his lawyer that he felt dizzy, disoriented or high at the settlement conference. Plaintiff testified that at the conclusion of the settlement conference, he asked his lawyer to seek a continuance so that he could think about the offer. He did not tell his lawyer that he wanted a continuance because he felt unwell. Plaintiff also testified that he did not tell Judge Vadas that he was too ill to participate in the settlement conference.

At the evidentiary hearing, consistent with his detailed declaration in support of the pending motion, plaintiff testified regarding his extensive recollection of the settlement conference. Plaintiff testified that Judge Vadas gave him examples of other cases and told him that he should consider the difficulty he would have in prevailing. Plaintiff testified that Judge Vadas told him that he should understand the costs associated with going to trial. Plaintiff also testified that Mr. Weaver told him that he could not possibly win against defendant Rendon.

Plaintiff also testified that at the settlement conference, he told Judge Vadas and his lawyer that the $4000 offered was not enough. Judge Vadas told plaintiff that the defendants were not going to budge. Plaintiff then asked for time to think about the proposed offer. Judge Vadas told him that he had to decide that day whether or not to accept the deal. Plaintiff testified

3

that at the settlement conference, Judge Vadas also told him that as a term of the settlement agreement, plaintiff would almost certainly be transferred to San Quentin State Prison.

Plaintiff further testified that immediately following the settlement conference, he was disgusted with himself and felt embarrassed for agreeing to the settlement. Because he felt embarrassed, he did not tell the inmate who provided him with legal assistance about the terms of the settlement conference until a later time. Plaintiff testified that he was very unhappy about the amount of money the case settled for, i.e. $4000. Plaintiff testified that if the case had settled for $12,000, he would not have filed his motion to rescind.

Plaintiff testified that Judge Vadas told him that he had handled hundreds of civil cases. Judge Vadas also told plaintiff that it was difficult to win this type of case. After the hearing, with the help of another inmate, plaintiff researched Judge Vadas' experience and his representations regarding the success of other cases on the computer in the prison law library.

Plaintiff testified that during the settlement conference, he felt that he was not sufficiently involved in the negotiation process. He also felt that Mr. Weaver did not adequately advocate on his behalf and that Judge Vadas was biased.

Evidence was presented at the evidentiary hearing that in June 2010, plaintiff was litigating an appeal in the Ninth Circuit Court of Appeals in another action. In particular, between June 23, 2010, and June 28, 2010, plaintiff received an order from the Ninth Circuit denying an appeal. On July 2, 2010, plaintiff filed a petition for rehearing en banc in the Ninth Circuit. During that time, plaintiff was taking Tylenol 3. Plaintiff testified that he received help from another inmate in litigating this appeal and preparing the petition for rehearing. In addition, on March 3, 2011, when plaintiff filed his 20 page objections in the instant action to the January 19, 2011 finding and recommendations, plaintiff was taking Tylenol 3. Plaintiff testified that another inmate assisted him in preparing the objections.

////

////

At the evidentiary hearing, Judge Vadas testified that it is his normal practice to continue a settlement conference if one party appears not mentally competent to proceed.[1] Judge Vadas testified that plaintiff's settlement conference was conducted in accordance with his normal practices and procedures.

At the evidentiary hearing, plaintiff's treating physician at the time of the settlement conference, Dr. Shadday, testified. Dr. Shadday testified that plaintiff's medical records indicate that plaintiff took Tylenol 3 on July 2, 2010, July 5, 2010, July 6, 2010, July 7, 2010, and not again until July 30, 2010. In other words, plaintiff's medical records indicate that plaintiff did *not* take Tylenol 3 on the date of the settlement conference.

Dr. Shadday testified that if plaintiff did not take all 14 of the Tylenol 3 pills prescribed on June 23, 2010, they would be sent back to the pharmacy at the end of 14 days, i.e. on July 7, 2010. Dr. Shadday testified that Tylenol 3 is considered a mild form of pain medication. He testified that it could cause drowsiness, upset stomach and constipation. He testified that the most common side effect is upset stomach. He said less than 5% of people who take Tylenol 3 also report feeling lightheaded. Dr. Shadday testified that a person taking Tylenol 3 should expect a minimal effect on their cognitive facilities. Dr. Shadday testified that for plaintiff to experience the level of drowsiness and confusion he testified to, he would have to have taken at least 5 Tylenol 3 simultaneously.

Dr. Shadday testified that when he examined plaintiff on June 28, 2010, plaintiff did not complain that he felt lightheaded, dizzy, nauseated or high from taking Tylenol 3. Dr. Shadday testified that if plaintiff had told him that he felt these side effects, he would have discontinued this medication. Dr. Shadday further testified that the half life of Tylenol 3 is 2-4 hours. After 48 hours, only a small amount of Tylenol 3 would remain in a person's body.

---

[1] On June 27, 2011, Judge Vadas sent the court a letter asserting the privilege of confidentiality of mediation communications. Accordingly, the testimony of Judge Vadas was limited to his normal practices and procedures.

1  Plaintiff's medical records contained no record of plaintiff complaining about the side effects of
2  Tylenol 3.
3        Dr. Shadday testified that it was possible that the Tylenol 3 combined with blood
4  pressure medication could cause the side effects plaintiff described, but it is *not probable*.  Dr.
5  Shadday testified that if plaintiff suffered from the side effects he complained of, they would be
6  observable (i.e. at the settlement conference by Craig Weaver or Judge Vadas).
7        Craig Weaver testified that at the time of the settlement conference, plaintiff told
8  him that he felt tired but that other than that he was okay.  Weaver testified that before the
9  settlement conference, plaintiff told him that he did not feel well but wanted to continue with the
10 hearing.  Weaver testified that plaintiff asked for clarification of issues on a number of occasions.
11 Weaver thought that the matters plaintiff sought clarification of were based on plaintiff's status
12 as a lay person.  Weaver testified that plaintiff did not appear disoriented.
13       *Analysis*
14       Based on the record and evidence and testimony received at the evidentiary
15 hearing, the undersigned finds that at the settlement conference, plaintiff understood the nature of
16 the settlement agreement and appreciated its probable consequences.  At the evidentiary hearing,
17 significant doubt was raised regarding whether plaintiff took Tylenol 3 on the day of the
18 settlement conference.  As discussed above, plaintiff's medical records indicate that he did not
19 receive Tylenol 3 on July 9, 2010.  However, even assuming plaintiff took Tylenol 3 on the
20 morning of July 9, 2010, the record reflects that he understood what happened at the settlement
21 conference.
22       In his declaration submitted in support of the pending motion and at the
23 evidentiary hearing, plaintiff clearly recalled much of what occurred at the settlement conference.
24 In his declaration, plaintiff described in detail what happened when he first went into the
25 conference room.  (Dkt. 189, at 4, ¶ 12.)  Plaintiff then described a conversation between himself,
26 counsel and Judge Vadas during which Judge Vadas described another case in which a prisoner

had gone to trial. (Id., at 5, ¶ 13.) In his declaration, plaintiff went on describe a conversation with Judge Vadas regarding how much plaintiff still owed in restitution. (Id., at 6, ¶ 14.) Plaintiff also described statements made to him by Judge Vadas and Mr. Weaver in which they encouraged him to accept the settlement offer of $4000 and a transfer to San Quentin. (Id., at 7, ¶ 16.) If the medication plaintiff took on July 9, 2010, was having the effect on plaintiff that he claims, he could not have described in detail what occurred at the settlement conference in his declaration or in his testimony at the evidentiary hearing. Plaintiff's ability to recall the events of the settlement conference, including the discussion regarding the proposed settlement, indicates that he understood the nature of the settlement agreement and its probable consequences. The fact that plaintiff apparently felt embarrassed by the terms he agreed to immediately following the settlement conference also undermines his claim that he did not understand the terms of the agreement or its consequences.

The fact that plaintiff did not request a continuance of the conference until the terms had been negotiated also undermines his claim that he was, in effect, so disoriented as a result of pain medication that he did not understand what was going on. If plaintiff was so ill that he did not understand what was going on, the undersigned expects that he would have requested a continuance much earlier in the settlement conference or at least communicated his illness to Mr. Weaver or Judge Vadas.

In addition, both Judge Vadas and Mr. Weaver indicated through their testimony that if they believed that plaintiff was so impaired that he could not participate in the settlement conference, they would have terminated the settlement conference. Dr. Shadday also testified that for plaintiff to be feeling the way he claims to have felt at the settlement conference, he would have to have taken at least 5 Tylenol 3s on July 9, 2010. Dr. Shadday also testified that it was not probable that the combined effects of the Tylenol 3 and plaintiff's blood pressure medication would have caused plaintiff to feel the way he testified to. In any event, according to Dr. Shadday, plaintiff's symptoms would have been observable. In summary, the testimony of

Judge Vadas, Mr. Weaver and Dr. Shadday called into question plaintiff's credibility regarding his cognitive state during the settlement conference.

Plaintiff's testimony at the evidentiary hearing indicates that much of what troubled plaintiff about the settlement conference was the process itself. Plaintiff testified that he did not feel sufficiently involved in the negotiations. Plaintiff also testified that he did not feel that Mr. Weaver advocated adequately on his behalf and that Judge Vadas was biased. Dissatisfaction with the process does not justify overturning the settlement agreement.

The record reflects that on June 9, 2010, plaintiff had the ability to understand the nature of the settlement agreement and appreciate its probable consequences. Plaintiff's motion to rescind is based on a case of buyer's remorse which is not grounds to overturn the settlement agreement.[2]

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to rescind the settlement agreement (Dkt. No. 189) be denied;

2. Defendants' motion to enforce the settlement agreement (Dkt. No. 190) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////

---

[2] Moreover, plaintiff admitted that he received the settlement amount of $4000 and much of it was used to pay his outstanding orders of restitution. Plaintiff concedes that he has no ability to repay the money if the settlement was rescinded.

1 parties are advised that failure to file objections within the specified time may waive the right to
2 appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: July 7, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

tab360.57